# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **STRIKE PCH, LLC,** on behalf of itself and derivatively on behalf of Sokaor Capital, LLC,<br><br>Plaintiff,<br><br>v.<br><br>**ISAAC STERN and SOKAOR CAPITAL, LLC,**<br><br>Defendants. | Docket No.: 18-00789<br><br>**OPINION and ORDER** |

## WILLIAM J. MARTINI, U.S.D.J.:

Plaintiff Strike PCH ("Strike"), on behalf of itself and derivatively on behalf of Sokaor PCH, LLC ("Sokaor"), seeks a temporary restraining order against Isaac Stern and Sokaor pursuant to Federal Rule of Civil Procedure 65(b). Strike seeks to restrain Stern, as the sole manager of Sokaor, from disposing of any Class A shares of Pinnex Capital Holdings, LLC ("Pinnex") or creating a "litigation fund" using Sokaor resources. Strike also moves the Court to require Stern to make cash distributions to Sokaor members and to provide certain financial information pertinent to Strike's tax reporting requirements. The motion is **GRANTED** with respect to Defendants' failure to provide certain financial and tax-related information specified under the Sokaor Agreement. All other requests for immediate restraints are **DENIED** in light of Strike's inability to establish the existence of "imminent harm" that would be unsusceptible to damages traditionally available at law.

## I. BACKGROUND

Until July 1, 2016, Sokaor's only member was Isaac Stern. Compl. ¶ 9. At that time, Sokaor owned 30.21% of outstanding "Class A" preferred shares of Pinnex, of which Stern also served as a manager. *Id.* at ¶ 10. Sokaor's sole purpose is and has always been to invest in preferred Class A shares of Pinnex. *Id.* at ¶ 15. On July 1, 2016, Plaintiff Strike purchased a 19.76% stake in Sokaor for $4,800,000 at $8.00 per share. *Id.* at ¶ 13. Stern remains the majority owner and sole manager of Sokaor. *Id.* at ¶¶ 16-17. The Amended and Restated Operating Agreement of Sokaor Capital LLC (the "Sokaor Agreement") prohibits Stern from, among other things, amending or waiving any provision of Sokaor's agreement with

1

Pinnex (the "Pinnex Agreement") "in a manner that is adverse to the interests of Strike (including, without limitation, Strike's indirect interests arising from its status as a Member [of Sokaor])." Sokaor Agreement § 3.1.2(m).

Strike alleges that in mid-2017, Stern learned of an opportunity to purchase a majority stake in Pinnex. According to Strike, Stern had both a fiduciary and contractual obligation to inform Sokaor of this business opportunity. Compl. at ¶¶ 74-75. Instead, in May 2017, Stern purchased for himself the majority stake in Pinnex at roughly $2.21 per share, a price "far below the valuation of $8.00 per share implied by Strike's indirect purchase of the same class of Pinnex shares on July 1, 2016." *Id.* at ¶¶ 20-23. Upon being confronted by representatives from Strike, Stern offered to sell Strike 1% of Pinnex at the reduced price paid by Stern. *Id.* at ¶ 29. Strike declined the offer and requested to purchase a *pro rata* share of the newly acquired Pinnex stock, as the Sokaor Agreement provided. *Id.* at ¶ 30.

On September 6, 2017, Strike requested certain financial information from Stern regarding Pinnex income and distribution. *Id.* at ¶ 31. Stern has allegedly failed to provide this information, nor has he provided K-1 forms that Strike needs to prepare its September 15, 2017, tax filings. *Id.* at ¶ 35. Instead, Stern has repeatedly threatened litigation. *Id.* at ¶¶ 26, 37, 43. On September 14, 2017, Stern advised Strike that "Sokaor's management has reason to believe Sokaor may soon be embroiled in extensive and expensive litigation," and that Sokaor would be discontinuing its normal distributions in order to build a litigation reserve. *Id.* at ¶ 37. Strike interpreted this action as retribution for Strike's continuing inquiry into Stern's private acquisition of Pinnex shares. *Id.* at ¶ 38.

On October 3, 2017, Strike notified Stern of an arbitration demand pursuant to Section 12.13 of the Sokaor Agreement. *Id.* at ¶ 45.[1] On or about December 17, 2017, Stern advised that Pinnex had made a capital call upon its members and that Sokaor used funds to meet that call. *Id.* at ¶¶ 53-55. At this time, Stern was the controlling member of both Sokaor and Pinnex. According to Strike, Stern failed to provide detailed information about the capital call, again violating the Sokaor Agreement. *Id.* at ¶ 63. Stern informed Strike that if Sokaor was unable to meet additional capital calls, Sokaor's interest in Pinnex—and, by extension, Strike's interest in Pinnex—would be subject to dilution under the terms of the Pinnex Operating Agreement. *Id.* at ¶ 57. Shortly thereafter, Stern notified Strike that Sokaor indeed failed to satisfy a Pinnex capital call. *Id.* at ¶ 64. Because Stern owns the majority interest in both Sokaor and Pinnex," Strike argues, "Stern has it in his power to both issue calls on behalf of Pinnex and refuse to respond on behalf of Sokaor." *Id.* at ¶ 66. After several acrimonious exchanges with Stern's counsel, Strike filed its derivative action (along with the instant order to show cause) against Stern and Sokaor on January 18, 2018.

---

[1] The status of that arbitration is not clear.

## II. LEGAL STANDARD

In considering a temporary restraining order or preliminary injunction, district courts weigh the following four factors: (1) the likelihood of success on the merits; (2) irreparable harm if the injunction is not granted; (3) the balance of hardships between the parties; and (4) the public interest. *Winters v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *American Tel. and Tel. Co. v. Winback and Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994). The injunction should issue only if the plaintiff produces evidence sufficient to convince the district court that all four factors favor preliminary relief. *Opticians Ass'n v. Independent Opticians*, 920 F.2d 187, 192 (3d Cir.1990). Unlike a Court's decision to grant or deny a preliminary injunction, a decision as to temporary restraining order is not an adjudication on the merits. *See United States v. Atl. Richfield, Co.*, 297 F.Supp.2d 1060, 1061 (S.D.N.Y. 1970).

## III. DISCUSSION

"A showing of irreparable harm is the single most important prerequisite" for immediate injunctive relief. *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009). Economic loss does not constitute irreparable harm. *Acierno v. New Castle Cty.*, 40 F.3d 645, 653 (3d Cir. 1994). "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Id.* (citing *Sampson v. Murray*, 415 U.S. 61, 90 (1974)). Here, Strike alleges that irreparable harm will befall it if Stern proceeds to dilute Sokaor's interest in Pinnex:

> Stern's transparent intention is to dilute the interest of Sokaor, and thereby of Strike, in Pinnex, by orchestrating an alleged default by Sokaor in meeting Pinnex capital calls and then selling additional units of Pinnex to himself or others affiliated with him . . . If immediate injunctive relief is not issued, the arbitration may be rendered a nullity through the improper actions of Stern in diverting the cash of Strike to Pinnex, wrongfully using it to create a litigation 'war chest' to fund vexatious litigation to avoid the consequences of his breaches of his fiduciary and contractual duties, and diluting Strike's interest in Pinnex.

Compl. ¶¶ 67, 69.

These actions, if true, are troublesome. Nevertheless, they do not result in the sort of "irreparable harm" required for the Court to impose immediate restraints. Most courts have held that stock dilution, absent a major change in voting power, is more like traditional economic harm—which can be remedied with money damages—than the sort of irreparable harm contemplated by Rule 65. *See In re Molycorp, Inc.*, No. BR 15-11357-CSS, 2016 WL 4473332, at *3 (D. Del. Aug. 23, 2016) (rejecting claim that "severe dilution" of stock amounted to irreparable harm); *Spencer Trask Software & Info. Servs.,*

*LLC v. RPost Int'l Ltd.*, 190 F. Supp. 2d 577, 581 (S.D.N.Y. 2002) (rejecting the proposition that the dilution of a plaintiff's stock necessarily constitutes irreparable harm). *Weber v. Cont'l Motors Corp.*, 305 F. Supp. 404, 406 (S.D.N.Y. 1969) ("Plaintiff has also made no showing of irreparable injury to the minority stockholders if the injunction is not granted. If at trial, plaintiff proves his allegations, the court can order payment of the dividends, set aside the Exchange Offer, and award damages."). *See also Calamore v. Juniper Networks Inc.*, No. C07-01772MJJ, 2007 WL 1100313, at *2 (N.D. Cal. Apr. 12, 2007) ("[T]here is little evidence in the record indicating that the number of shares that would be issued between today and the date of a preliminary injunction hearing is particularly significant compared to the number of shares already issued since the Plan was adopted in May 2006."); *Ocilla Indus., Inc. v. Katz*, 677 F. Supp. 1291, 1297 (E.D.N.Y. 1987) ("Not every issuance of preferred stock poses a threat of irreparable harm to the shareholders of a company.").

Strike argues that "[i]f Stern disposes of the shares by transferring them or selling them to a *bona fide* purchaser, the shares will be forever lost to Strike/Sokaor and the value of the opportunity will be very difficult if not impossible to determine." Pl. Br. in Support of Order to Show Cause, at 9. Yet Strike provides no evidence that Stern intends to divest himself of Pinnex stock. And even if Stern decides to transfer his majority interest to a third party, there appears nothing unique about this investment that would prevent the Court from awarding commensurate damages at trial. Indeed, in Strike's September 27, 2017, letter, counsel suggested that, as one means of resolution, Stern "buy Strike's interests in Sokaor on commercially reasonable terms." Ex. B. to Strike's Verified Complaint.

**Tax and Financial Information Withheld by Defendants**

Separate from alleging a stock dilution scheme, Strike claims that Stern—as exclusive manager of Sokaor— has failed to provide financial and tax-related information to which Strike is entitled under the Sokaor Agreement. Compl. ¶¶ 86-90. Section 11.4, which governs Financial Statements and Reports, provides that Sokaor must provide each Member, including Strike:

> 11.4.1 all budgets, projections, monthly and other period reports, audited and unaudited financial statements, tax returns and reports, and other information, statements and documents furnished to [Sokaor] by Pinnex or its representatives in accordance with the Pinnex LLC Agreement or otherwise, in each case, promptly, but in no event more than five (5) Business Days following the receipt thereof by the Company; and

> 11.4.2. detailed financial statements and information and documents (including Schedule K-1 or comparable information) necessary or desirable for the preparation or support of Each Member's tax returns required in any jurisdiction, as soon as practicable, but in no event more than 90 days, after the end of each Fiscal Year.

Sokaor Agreement, Compl. Decl. A, at 24. Strike alleges that Defendants have failed to provide the documents and information furnished to Sokaor by Pinnex within the 5-day window applicable to ¶ 11.4.1. With respect to the financial information (including the 2016 K-1) required for the preparation of tax returns, Defendants have failed to satisfy this obligation within the 90-day window specified in ¶ 11.4.1 The Court now orders that Defendants must satisfy (at last) their obligations under 11.4.1 and 11.4.2 within 10 days of this Opinion and Order.

## IV. CONCLUSION

For the foregoing reasons, Strike's motion for immediate restraints is **DENIED in part** and **GRANTED in part**.

It is hereby **ORDERED** that within ten days of this Opinion and Order, Defendants shall satisfy in good faith their obligations under Sections 11.4.1 and 11.4.2 of the Sokaor Agreement.

/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

**February 6, 2018**